Argued and submitted June 6, reversed and remanded with instructions September 10, reconsideration denied November 7, petition for review denied December 23, 1986
(302 Or 461)

CORVALLIS AERO SERVICE, INC. et al,
*Appellants,*

*v.*

VILLALOBOS et al,
*Respondents.*

(85-0136; CA A37299)

724 P2d 880

John L. Langslet, Portland, argued the cause for appellants. With him on the briefs was Martin, Bischoff, Templeton, Biggs & Ericsson, Portland.

No appearance for respondent Francisco Villalobos.

Richard D. Wasserman, Assistant Attorney General, Salem, argued the cause for respondent State Accident Insurance Fund Corporation. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

In 1979, while employed by Jose Martinez, Francisco Villalobos suffered an on-the-job injury caused by the negligence of employes of Corvallis Aero Service (Corvallis).[1] Villalobos received workers' compensation benefits from SAIF, and he brought a third-party negligence action against Corvallis. Corvallis' liability insurer was insolvent. Consequently, the Oregon Insurance Guaranty Association (OIGA) assumed the responsibilities of Corvallis' insurer pursuant to ORS 734.510 to 734.710, for Villalobos' action. Villalobos and Corvallis entered into a settlement agreement, under which Corvallis agreed to pay Villalobos $35,000 plus interest, contingent on a final determination in this declaratory judgment action brought by Corvallis and OIGA that SAIF has no right to share in the settlement proceeds and has no monetary claim against Villalobos by virtue of the settlement.[2] The trial court ruled in favor of SAIF, OIGA appeals and we reverse.

The issues in this appeal involve two statutory schemes: ORS 656.576 to 656.595, relating to third-party actions and allocation of third-party recoveries between workers' compensation insurers and recipients; and ORS 734.510 to 734.710, relating to the payment of "covered claims" against insolvent insurers. Under the ORS chapter 656 provisions, a worker who suffers an injury which is compensable for workers' compensation purposes, and which is caused by the negligence or wrong of a third party who is not exempt from tort actions under the Workers' Compensation Law, may elect to bring an action against the third party. If the worker so elects, the "paying agency" responsible for the payment of workers' compensation benefits has a lien on the worker's cause of action and is entitled to share in the proceeds in accordance with the formula of ORS 656.593. If the worker elects not to bring the action, the paying agency may bring an action in the worker's name against the third party, with any

---

[1] Villalobos subsequently died in an unrelated accident, and his personal representative has been substituted as a party to this action. We will nevertheless refer to Villalobos as a party to this action and to the underlying action against Corvallis.

[2] OIGA, of course, represented Corvallis in connection with the settlement. They appeared jointly in the declaratory judgment action. In the balance of this opinion, when we refer to the two collectively as parties to the action, we use "OIGA."

recovery to be allocated between the paying agency and the worker in accordance with ORS 656.591.

As relevant here, ORS 734.510 to 734.710 provide that all insurers authorized to transact business in this state ("member insurers"[3]) must pay assessments to OIGA to fund the latter's duties under the statutes. Those duties include the defense, processing and payment of "covered claims" against insolvent insurers and their insureds. There is no dispute but that Villalobos' claim against Corvallis is a "covered claim" as defined by ORS 734.510(4). The issue is whether SAIF is entitled to share in Villalobos' recovery from Corvallis pursuant to ORS 656.593 or whether its lien under that statute is excluded by ORS 734.510(4)(b)(B), which provides:

"(b) 'Covered claim' does not include:

"* * * * *

"(B) Any amount due any reinsurer, insurer, insurance pool or underwriting association as subrogated recoveries or otherwise."

Also germane is ORS 734.695, which provides:

"The insured of an insolvent insurer shall not be personally liable for amounts due any reinsurer, insurer, insurance pool or underwriting association as subrogation recoveries or otherwise up to the applicable limits of liability provided by the insurance policy issued by the insolvent insurer."

**1.** SAIF makes four basic arguments for the proposition that the quoted statutes do not preclude it from imposing its lien on the proceeds of the Villalobos-OIGA settlement. It contends, first, that its lien does not pertain to any amounts due SAIF or owed by Corvallis, but attaches only to the amounts to be paid by OIGA to Villalobos. According to SAIF, those amounts

"* * * are due to the injured worker (now his estate), not to an 'insurer * * * as subrogated recoveries or otherwise.' * * *

"* * * * *

---

[3] We assume for argument that, because SAIF does not require a certificate of authority from the Insurance Commissioner and because of certain statutory provisions which pertain specifically to it, SAIF is not a "member insurer," although it is an "insurer." *See* ORS 656.752; 734.010. As SAIF appears to agree, the anti-subrogation provisions of ORS 734.510 to 734.710 do apply to payments to insurers other than member insurers, albeit, in SAIF's view, not to the particular payments at issue here.

"Because the damages payable by OIGA (in place of the insolvent insurer) to the Villalobos estate are not amounts payable to SAIF, those amounts do not fall within the ORS 734.510(4)(b)(B) exclusion from the definition of 'covered claim.'

"Nor does ORS 734.695 aid plaintiffs. That statute merely deals with the personal liability of the 'insured of an insolvent insurer,' in this case, Corvallis Aero Service. Allowing SAIF to enforce its statutory lien against the proceeds of the settlement will not render Corvallis Aero Service personally liable to anyone * * *."

We think that SAIF's argument is based on too narrow a reading of both statutory schemes. If Villalobos had elected not to sue Corvallis, SAIF would have been entitled to proceed against Corvallis in his name and would have been entitled to an allocation of any recovery under ORS 656.591, rather than under ORS 656.593; that would have essentially been a subrogation action. We do not think that the legislative preclusion of OIGA's subrogation to insurers was meant to turn on the coincidence of whether the worker or the insurer brings the action in which the amounts payable to the insurer are recovered. More saliently, SAIF's argument is inconsistent with the language of ORS 734.510(4)(b)(B), which says that covered claims do not include any amounts "due any * * * insurer * * * as subrogated recoveries or otherwise." Our understanding of that language is that an amount which, for any reason, finds its way to an insurer rather than a claimant or an insured, is beyond the scope of what OIGA is authorized or required to pay. Given our understanding, we do not agree with SAIF that it is material whether it brings the action as the worker's subrogee or shares in the damages recovered in an action instituted by the worker. In either instance, ORS 734.510(4)(b)(B) prohibits payments to the insurer.

■     SAIF's second and third arguments are based on its view of the policy and purposes of ORS 734.510 to 734.710. SAIF understands the purposes of the statutes to be the protection of claimants and policyholders and the establishment of an assessment system to fund those protective objectives. See ORS 734.520. SAIF argues that those purposes are not furthered by applying ORS 734.510(4)(b)(B) here, because

"* * * ORS 734.510 to 734.710 protect claimants and policyholders against financial loss because of an insurer's

insolvency and, through the creation of an association of insurers, distribute the cost of that protection proportionately among the association's members. At the same time, through ORS 734.510(4)(b)(B), the 'anti-subrogation' provision, the statutes prevent the ultimately meaningless shuffling of money back and forth between the OIGA and individual members on account of subrogated claims. * * *

"The policy behind ORS 734.510(4)(b)(B) does not apply here. As already noted, the claim involved here is not *SAIF's* claim against Corvallis Aero Service, being handled by OIGA pursuant to ORS 734.570. Rather, the claim is by the Villalobos estate; SAIF merely has a statutory lien against a portion of the proceeds. Thus, the claim is not merely a battle between OIGA and one of its member insurers on a subrogation matter, which ORS 734.510(4)(b)(B) resolves by forcing the member insurer to take the loss." (Footnotes omitted; emphasis SAIF's.)

The problem with SAIF's analysis of the logic and policy underlying ORS 734.510(4)(b)(B) is that, whatever *purpose* the legislature may have had for doing so, the prohibition it imposed *in clear terms* was on payments to insurers of amounts "as subrogated recoveries or otherwise." The end result of SAIF's theory would be that money OIGA pays under its settlement with Villalobos will be transmitted to SAIF, because SAIF has made insurance payments on Villalobos' workers' compensation claim. The language of the statute does not allow that result.[4]

■ SAIF argues next that, if it is not able to enforce its lien, Villalobos will have a double recovery: the workers' compensation benefits plus the full amount of the tort damages, unadjusted in accordance with ORS 656.593. Assuming that to be correct, *but see* note 4, *supra,* the answer is: "So what?" The effect and purpose of ORS 734.510(4)(b)(B) and 734.695 are to prevent insurers from seeking or recovering what they *otherwise* could. In some instances, the corollary will be that someone will not have to pay what he would otherwise not be entitled to keep. The

---

[4] Given our conclusion, we need not discuss SAIF's policy argument at length. As it posits, the objective of ORS 734.510 to 734.710 is to protect claimants and insureds, not insurers. The role of the anti-subrogation provisions in carrying out that objective is clear. SAIF's policy argument disregards the fact that an insurer's indirect recovery from amounts OIGA pays to a claimant can affect the total amount paid to settle a claim as much as the insurer's direct recovery from OIGA can.

elimination of a remedy often carries with it the creation of a windfall. That fact of life does not have any bearing on the meaning of the statutes.

■ SAIF's remaining argument is that ORS 734.510 to 734.710 do not apply to it, because ORS 731.028 enumerates the provisions of the Insurance Code to which SAIF is subject "as a domestic insurer" and does not mention the ORS chapter 734 provisions. We do not agree that an insurer's being subject to the affirmative regulations and requirements of ORS chapter 734 is relevant to whether the insurer is entitled to payments that are prohibited by ORS 734.510(4)(b)(B) and 734.695.[5] Those provisions pertain, respectively, to what OIGA and the insureds of insolvent insurers may or must *pay*; the inability of SAIF to *receive* payments is ancillary to the fact that the statutes excuse OIGA and Corvallis from making those payments, and the fact that ORS 731.028 makes no reference to ORS 734.510(4)(b)(B) and 734.695 does not give SAIF a unique right to receive amounts which the unmentioned statutes unqualifiedly provide that OIGA and the insureds need not pay to *any* insurer.

■ Underlying some of SAIF's arguments is the suggestion that, because it enjoys a *lien* under ORS 656.593, its rights are not defeated by the anti-*subrogation* provisions of ORS chapter 734. That suggestion is incorrect for two reasons. The first is that the statutes preclude payment of amounts due insurers "as subrogation recoveries *or otherwise.*" (Emphasis supplied.) The second is, as OIGA states in its reply brief, that "SAIF's lien claim basically is nothing more than a subrogation claim for which the legislature has granted lien rights as a mechanism of enforcement." ORS 734.510(4)(b)(B) and 734.695 preclude recoveries based on subrogation rights; ORS 656.593 creates a lien that is wholly derivative from the fact that the third-party statutes also make the paying agent the subrogee of the worker's action.

Reversed and remanded with instructions to enter a declaratory judgment for plaintiffs.

---

[5] We note that SAIF is not the only insurer which is apparently not subject to the affirmative requirements of ORS chapter 734. *See, e.g.,* ORS 731.042(4).