[No. 60236-1.   En Banc.   October 7, 1993.]

EDWIN E. STAMP, *Respondent*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES, ET AL, *Appellants*.

*Christine O. Gregoire, Attorney General,* and *Jeffrey P. Bean, Assistant,* for appellant State.

*Hall & Keehn,* by *Janet L. Smith,* for appellant Summit Timber Company.

*Corrie J. Yackulic, James D. Hailey,* and *Schroeter, Goldmark & Bender,* for respondent.

DURHAM, J. — Summit Timber Company (Summit) and the Department of Labor and Industries (Department) seek to enforce their respective liens against the proceeds received by respondent Edwin E. Stamp from the Oregon Insurance Guaranty Association (OIGA). OIGA's enabling statute prohibits OIGA funds from being recovered by "any reinsurer, insurer, insurance pool or underwriting association as subrogated recoveries or otherwise". Or. Rev. Stat. (hereinafter ORS) § 734.510(4)(b)(B) (1991). We must decide if Summit,

which is a self-insurer, or the Department qualify as "insurers". Additionally, the parties dispute the applicability of Washington law. There has not been an adequate showing of a conflict between Oregon and Washington law and the law of this forum will be applied. Having already determined that the Department is not an "insurer" for purposes of the identical Washington prohibition,[1] we now hold that self-insurers such as Summit are also not "insurers" for purposes of the insurance guaranty statute.

The facts of this case are relatively straightforward and have been stipulated to by both parties. Respondent Edwin Stamp, a Washington resident, sustained an industrial injury while employed by Summit, a Washington corporation acting as a self-insured employer. Stamp filed a claim pursuant to the Industrial Insurance Act, RCW Title 51. Summit paid him $112,839.55 in benefits and also asserted a lien against any third party recovery by Stamp pursuant to RCW 51.24-.060. The Department paid Stamp $1,195.75 in benefits and similarly asserted its lien.

Stamp brought a products liability action in federal court in 1985 against Lumber Systems, Inc. (Lumber Systems), an Oregon corporation. Lumber Systems was the designer, manufacturer, and installer of the sawmill equipment which injured Stamp. Lumber Systems had $500,000 in primary coverage through Mission Insurance, which became insolvent in 1987. As a result, OIGA[2] stepped in to provide a statutory maximum of $300,000 to cover Stamp's claim.

Stamp, Lumber Systems and OIGA settled Stamp's claim for $350,000. OIGA paid $300,000, Lumber Systems paid

---

[1] *Washington Ins. Guar. Ass'n ex rel. Bloch v. Department of Labor & Indus.*, 122 Wn.2d 527, 859 P.2d 592 (1993).

[2] OIGA was created to provide limited coverage to policyholders in the event of the insolvency of their insurer. ORS 734.520. It operates similarly to our own Washington Insurance Guaranty Association. *See* RCW 48.32. *See also Washington Ins. Guar. Ass'n ex rel. Bloch v. Department of Labor & Indus.*, 122 Wn.2d 527, 859 P.2d 592 (1993). Essentially, OIGA "stands in the shoes" of the insolvent insurer, providing both a defense to claims and coverage.

$25,000, and Lumber Systems' excess carrier paid $25,000. Neither Summit nor the Department was a party to the settlement, although Summit had been aware of the on-going negotiations. As part of the settlement, Stamp's attorneys agreed to make sure that any liens or subrogated interests against the recovery would be satisfied.

Both Summit and the Department asserted their statutory right to reimbursement against Stamp's recovery. Accordingly, the Department issued an order distributing the recovery as follows: $135,624.26 to Stamp's attorney for fees and costs, $151,809.85 to Stamp himself, $61,370.14 to Summit, and $1,195.75 to the Department. The order also provided that no benefits would be paid until the excess recovery of $45,987 was expended for costs incurred as a result of the injury.

Stamp appealed this order to the Board of Industrial Insurance Appeals (Board). The Board affirmed the Department's distribution order. Stamp then appealed to the Snohomish County Superior Court, which reversed the Board's order and remanded to the Department to issue a new order excluding any reimbursement from the OIGA recovery. The Superior Court first determined that both Summit and the Department qualified as "insurers" for purposes of the Industrial Insurance Act, RCW Title 51. It then held that Oregon law should apply and that under such law, an insurer is forbidden from sharing in the recovery paid by OIGA. Hence, Summit and the Department were both forbidden to enforce their liens against that portion of the settlement paid by OIGA. However, recovery was allowed to these two parties from the sums contributed to the settlement by Lumber Systems and its excess insurer. The Department and Summit appealed to the Court of Appeals. This court, on its own motion, transferred the case here.

As a threshold matter, the parties contend that there is a conflict between Oregon and Washington law which necessitates engaging in choice of law analysis to determine which state's law to apply. Indeed, the Superior Court undertook

just such an analysis, and decided to apply Oregon law. However, we find that the laws of these two states are not in conflict, and so apply Washington law.

■ An actual conflict between the law of Washington and that of another state must be shown before this court will engage in a conflict of law analysis. *International Tracers of Am. v. Estate of Hard*, 89 Wn.2d 140, 144, 570 P.2d 131 (1977). Both Washington and Oregon have insurance guaranty acts which were culled from the National Association of Insurance Commissioners' model bill. *See* NAIC State Post-Assessment Insurance Guaranty Association Model Bill *in 1970 Proceedings of the National Association of Insurance Commissioners* 253 (Model Bill). *See generally* Paul G. Roberts, Note, *Insurance Company Insolvencies and Insurance Guaranty Funds: A Look at the Nonduplication of Recovery Clause*, 74 Iowa L. Rev. 927, 934 (1989). Both acts express a similar purpose:

> The purpose of this chapter is to provide a mechanism for the payment of covered claims under certain insurance policies to avoid excessive delay in payment and to avoid financial loss to claimants or policyholders because of the insolvency of an insurer, to assist in the detection and prevention of insurer insolvencies, and to provide an association to assess the cost of such protection among insurers.

RCW 48.32.010.[3] Both acts also exclude from a covered claim payable by its insurance guaranty association amounts due to any *reinsurer, insurer, insurance pool, or underwriting association*, either as subrogation or otherwise. *Compare* RCW 48.32.030(4) *with* ORS § 734.510(4)(b) (1991). Neither guaranty act defines the emphasized terms.

Hence, under either Oregon or Washington law, the interests are the same. If either party is found *not* to be an "insurer", then under either the Oregon or the Washington

---

[3]This language is nearly identical to that found in the Model Bill. *See* NAIC State Post-Assessment Insurance Guaranty Association Model Bill *in 1970 Proceedings of the National Association of Insurance Commissioners* 253. The Oregon statute differs only in that it removes the phrase "a mechanism", and adds the clause "and to assist in the liquidation of insurers as provided in this chapter". ORS § 734.520 (1991).

statute, that party's lien would not be excluded from the definition of "covered claims". *See* RCW 48.32.030; ORS § 734.510 (1991). Similarly, if either entity is determined to be an "insurer", then that party's lien would not be a covered claim under the law of either state. Both states share the same goal of ensuring that no "insurer" can recover from its insurance guaranty fund.[4] Determination of the status of these parties will affect future recoveries against our own Washington insurance guaranty fund, as well as its Oregon counterpart.

Nonetheless, respondent Stamp contends that the Oregon courts have already adjudged a state workers' compensation fund to be an "insurer" for purposes of the Oregon insurance guaranty statute, and that, therefore, a conflict exists. *See Corvallis Aero Serv., Inc. v. Villalobos*, 81 Or. App. 137, 724 P.2d 880, *review denied*, 302 Or. 461 (1986). Stamp is correct in recognizing that the real issue is the status of both Summit and the Department for purposes of an insurance guaranty act. However, he is incorrect in assuming that Oregon and Washington law conflict on this issue.

Neither *Villalobos* nor any other Oregon case or statute has determined the status of our unique workers' compensation fund or that of a self-insurer for purposes of a guaranty statute. The determination of the status of the Oregon state fund in *Villalobos* was based upon clear evidence that the fund's enabling statute, ORS § 656.752(1) (1991), defined it as an insurer. *Villalobos*, at 140 n.3. However, the Washington workers' compensation fund is significantly different in both function and scope. *Villalobos* is not determinative of its status. *Washington Ins. Guar. Ass'n ex rel. Bloch v. Department of Labor & Indus.*, 122 Wn.2d 527, 859 P.2d 592 (1993).

---

[4]Given the interests of OIGA in protecting its guaranty funds, we find it curious that Stamp should be asserting the guaranty act's covered claim exclusions as a "defense" in this action. Assuming, arguendo, that either entity were an insurer, OIGA would be obligated to offset Stamp's recovery by the amount of his workers' compensation benefits. ORS § 734.640 (1991). Hence, the amount of the disputed lien belongs to either OIGA or the appellants here — not Stamp. Nevertheless, this conundrum has not been briefed or argued by either party, and will not be a factor in our decision.

Since there is no friction between these two states' laws, we find this to be a false conflict, and so apply the law of the forum in deciding the outcome.[5] *Pacific Gamble Robinson Co. v. Lapp*, 95 Wn.2d 341, 345 n.1, 622 P.2d 850 (1980).

█ We have already determined that the Department does not act as an "insurer" for purposes of Washington's similar insurance guaranty act. *Bloch*, at 532-33. The Oregon guaranty act's covered-claim exclusion is identical to that of Washington, and the Department's status for purposes of that act remains the same. The Department is not an insurer and therefore can assert its lien against the proceeds received by Stamp.

█ Turning to the self-insurance question, our recent decision in *Kyrkos v. State Farm Mut. Auto. Ins. Co.*, 121 Wn.2d 669, 852 P.2d 1078 (1993) is nearly conclusive as to the nature of self-insurance. Although dealing with the underinsured motorist statute, RCW 48.22.030, we found that a certificate of self-insurance for purposes of that statute does not constitute an insurance policy:

> State Farm urges a broad understanding of the term "insurance policy" so as to include self-insurance. However, such a reading is specifically foreclosed by RCW Title 48, which defines "insurance' as "a contract whereby one undertakes to indemnify another or pay a specified amount upon determinable contingencies." RCW 48.01.040. . . . By its very nature, self-insurance does not involve this type of third party arrangement.

(Citations omitted.) *Kyrkos*, at 674. Although the *Kyrkos* opinion deals with self-insurance in the automobile liability

---

[5]Even were it necessary to undertake a conflict of laws analysis, Washington law would be used to determine the status of the two appellants here. Summit is a Washington corporation which is permitted to self-insure via RCW 51.14. The Department is an agency of the State of Washington. Both were created, and are regulated, under Washington law. Washington has a paramount interest in defining the status of such state-created entities. The liens asserted by these entities are created under Washington's workers' compensation statute. RCW 51.24.060. Oregon's only interest here is in ensuring that its state insurance guaranty fund moneys are not paid out, by subrogation or otherwise, to an insurer. Just as we will look to Oregon law to determine the status of its state-created fund, we rely solely on Washington law to determine the nature of our own workers' compensation scheme.

insurance situation, there is no principled reason to treat such an arrangement differently in the workers' compensation arena.[6] *See Bowens v. General Motors Corp.*, 608 So. 2d 999, 1003 (La. 1992) (treating self-insurance in workers' compensation context the same as in automobile context).

Moreover, decisions from other states agree with the conclusion that self-insurance is not insurance for purposes of the guaranty act. *Zinke-Smith, Inc. v. Florida Ins. Guar. Ass'n*, 304 So. 2d 507, 509 (Fla. Dist. Ct. App. 1974), *cert. denied*, 315 So. 2d 469 (Fla. 1975); *Iowa Contractors Workers' Comp. Group v. Iowa Ins. Guar. Ass'n*, 437 N.W.2d 909, 915-16 (Iowa 1989); *Bowens*, 608 So. 2d at 1003. *Zinke-Smith*, in examining the relationship between an excess insurer and a self-insurer, explained self-insurance this way:

> It is analogous to the more common types of direct insurance such as automobile collision coverage or major medical coverage, wherein there is usually a stated deductible amount, the effect of which is, in simplest terms, to make the insured "self-insured["] for any loss up to the amount of the deductible. No one has yet to suggest in such instances that the insured, being self-insured up to the amount of the deductible, is an "insurer" who has merely "reinsured" the risk above a certain limit.

*Zinke-Smith*, 304 So. 2d at 509; *accord Iowa Contractors Workers' Comp.*, 437 N.W.2d at 914-15. Finally, the National Association of Insurance Commissioners, which authored the model bill upon which both the Oregon and Washington guaranty acts were modeled, also has indicated that self-insurers should be able to recover from insurance guaranty funds. II *NAIC Proceedings* 783 (1983). *See also Iowa Contractors Workers' Comp.*, 437 N.W.2d at 914-15.

In keeping with a majority of jurisdictions which have considered the status of self-insurers under an insurance guaranty act, we hold that employers which self-insure their work-

---

[6]The *Kyrkos* decision engendered a persuasive and well-reasoned dissent which may have questioned the majority's assertion that self-insurance is not insurance. Nonetheless, the precedential value of the majority's view cannot be denied, and principles of stare decisis dictate that we now adopt that perspective in the workers' compensation arena.

ers' compensation obligations in Washington are not reinsurers, insurers, insurance pools or underwriting associations for purposes of either the Oregon guaranty act, or its nearly identical Washington counterpart. The Superior Court is reversed, and the decision of the Board of Industrial Insurance Appeals is reinstated.

ANDERSEN, C.J., and UTTER, BRACHTENBACH, DOLLIVER, SMITH, GUY, JOHNSON, and MADSEN, JJ., concur.