22 F.3d 928
 COLUMBIA GRAIN, INC., an Oregon corporation, Plaintiff,
v.
OREGON INSURANCE GUARANTY ASSOCIATION, an Oregon
association, Fourth-party defendant-Appellant,
and
LOUISIANA INSURANCE GUARANTY ASSOCIATION, Intervenor-Appellee,
v.
WISMER AND BECKER CONTRACTING ENGINEERS, a foreign
corporation, Third-party-defendant,
and
SHARP ELECTRIC INC., a foreign corporation,
Third-party-defendant-fourth-party-plaintiff-Appellee,
v.
BUHLER-MIAG, INC., a foreign corporation,
Third-party-defendant-plaintiff-Appellee.
COLUMBIA GRAIN, INC., an Oregon corporation, Plaintiff,
v.
LOUISIANA INSURANCE GUARANTY ASSOCIATION, Intervenor-Appellant,
v.
WISMER AND BECKER CONTRACTING ENGINEERS, a foreign
corporation, Third-party-defendant,
and
SHARP ELECTRIC INC., a foreign corporation,
Third-party-defendant-Appellee,
v.
BUHLER-MIAG, INC., a foreign corporation,
Defendant-third-party-plaintiff-Appellee,
and
Oregon Insurance Guaranty Association, an Oregon
association, Fourth-party-defendant-Appellee.
 Nos. 92-35572, 92-35581.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Jan. 4, 1994.
Decided April 25, 1994.
 
 William D. Okrent, Acker, Okrent, Portland, OR, Carey J. Guglielmo, Mathews, Atkinson, Guglielmo, Marks & Day, Baton Rouge, LA, for Louisiana Ins. Guar. Ass'n.
 Thomas W. Brown, Cosgrave, Vergeer & Kester, Portland, OR, for Oregon Ins. Guar. Ass'n.
 M. Elizabeth Duncan, W.A. Jerry North, Schwabe, Williamson & Wyatt, Portland, OR, for Buhler-Miag.
 Before: POOLE and TROTT, Circuit Judges, and KING,* District Judge.
 Opinion by Judge TROTT.
 Appeal from the United States District Court for the District of Oregon.
 TROTT, Circuit Judge:
 
 
 1
 Oregon Insurance Guaranty Association and Louisiana Insurance Guaranty Association appeal the district court's summary judgment in favor of Buhler-Miag, Inc. The district court ruled that Buhler-Miag's third-party claims against Sharp Electric, Inc. were "covered claims" under both Oregon and Louisiana law, entitling Buhler-Miag to recover a portion of these claims from the Oregon and Louisiana Insurance Guaranty Associations. We have jurisdiction under 28 U.S.C. Sec. 1291, and we conclude that Buhler-Miag's claims are excluded from the definition of a "covered claim" because any money paid on these claims will go to Buhler-Miag's insurer.I
 
 BACKGROUND
 
 2
 Columbia Grain, Inc. owned and operated a grain loading facility in Oregon. In 1976 and 1983, portions of the facility were damaged. Columbia Grain brought a product liability action against Buhler-Miag, the designer of part of the facility. Columbia Grain prevailed in its action, and Republic Insurance Company, Buhler-Miag's insurer, paid the resulting judgment of $796,214. Buhler-Miag and Republic Insurance executed a loan receipt agreement, in which Buhler-Miag pledged to Republic Insurance any claims or recovery it received from third parties or their insurers. Under the terms of the loan receipt, Buhler-Miag was to bring the claims in its own name, but at Republic Insurance's expense, and Buhler-Miag agreed not to settle any of its claims without Republic Insurance's consent.
 
 
 3
 Buhler-Miag then brought a third-party action against Sharp Electric, another company involved in constructing the facility, for contribution or indemnity. While this litigation was pending, Sharp Electric's insurance company became insolvent. As Sharp Electric is a Louisiana corporation, the Louisiana Insurance Guaranty Association ("LIGA") took on its defense against Buhler-Miag's action. Sharp Electric brought its own action against the Oregon Insurance Guaranty Association ("OIGA") to resolve issues arising from the insolvency of its insurer. Buhler-Miag and Sharp Electric eventually entered into a settlement agreement that included a stipulated judgment entered against Sharp Electric for $449,900. As part of the settlement, Sharp Electric assigned to Buhler-Miag all claims and rights which it might have against LIGA and OIGA.
 
 
 4
 Buhler-Miag then asserted its claims directly against LIGA and OIGA. LIGA and OIGA moved for summary judgment on the grounds that Buhler-Miag's claim is not a "covered claim" under Oregon and Louisiana law, and that they, therefore, are not liable. Buhler-Miag counterclaimed for summary judgment on the grounds that its claim is a "covered claim." The district court ruled that Buhler-Miag's claims are "covered claims" under both Oregon and Louisiana law and granted summary judgment for Buhler-Miag against both LIGA and OIGA.
 
 II
 OREGON LAW
 
 5
 All parties to this case agree that there were no disputed issues of fact before the district court when it granted summary judgment. The only question before us is whether the district court properly interpreted Oregon and Louisiana law in granting summary judgment for Buhler-Miag. We review de novo grants of summary judgment, Jones v. Union Pacific R.R., 968 F.2d 937, 940 (9th Cir.1992), as well as a district court's interpretation of state law. Salve Regina College v. Russell, 499 U.S. 225, 231, 111 S.Ct. 1217, 1220-21, 113 L.Ed.2d 190 (1991).
 
 
 6
 OIGA was created by the Oregon Legislature in 1971 "to avoid financial loss to claimants or policyholders because of the insolvency of an insurer." Or.Rev.Stat. Sec. 734.520 (1991). OIGA's expenses are financed by assessments against its members, which include all insurers writing policies in Oregon. Sec. 734.570(3). OIGA is "obligated to pay covered claims existing at the time of determination of insolvency of an insurer or arising within 30 days after the determination of insolvency." Sec. 734.570(1). In order for a claim to be considered "covered," the statute requires that "the claimant or insured is a resident of [Oregon] at the time of the occurrence giving rise to the unpaid claim, or the property for which claim arises is permanently located in [Oregon]." Sec. 734.510(4)(a)(B). However, "covered claims" do not include "[a]ny amount due any ... insurer ... as subrogated recoveries or otherwise." Sec. 734.510(4)(b)(B).
 
 
 7
 The parties do not challenge the district court's determination that Buhler-Miag's claim satisfies the first part of the "covered claim" definition; Transit Casualty (Sharp Electric's insurer) was insolvent and the property involved was permanently located in Oregon. What we must decide is whether the district court erred in determining that Buhler-Miag's claims are not claims for "[a]ny amount due any ... insurer ... as subrogated recoveries or otherwise." Id.
 
 
 8
 Subrogation is defined as the situation where insurance companies or others "step into the shoes of the party whom they compensate and sue any party whom the compensated party could have sued." Black's Law Dictionary, 1427 (6th ed. 1990). OIGA concedes that the arrangement between Buhler-Miag and Republic Insurance was not a subrogation agreement but a loan receipt. The difference between the two is that with a subrogation agreement, the insurer asserts the claim against the third party, whereas with a loan receipt, the insured makes the claim against the third party but may be contractually bound to give the money recovered to the insurer. See Northern Ins. Co. v. Conn Organ Corp., 596 P.2d 605, 610 (Or.Ct.App.1979). The district court found this distinction crucial and concluded that because under Oregon law loan receipts are not the equivalent of subrogation rights, loan receipts do not qualify as "subrogation recoveries or otherwise." OIGA again concedes that loan receipts are not the equivalent of subrogations rights but argues that they still qualify as "[a]ny amount due any ... insurer ... as subrogation recoveries or otherwise" because the money will ultimately go to Republic Insurance. OIGA places great emphasis on the words "or otherwise," arguing that any mechanism by which the insurer ultimately receives the recovery is sufficient to exclude the claim.
 
 
 9
 The Oregon Court of Appeals addressed this issue in Corvallis Aero Service, Inc. v. Villalobos, 724 P.2d 880 (Or.Ct.App.), review denied, 302 Or. 461, 730 P.2d 1251 (1986). Because this question involves the interpretation of state law, we are bound to follow the decisions of the Oregon Supreme Court. Meusy v. Montgomery Ward Life Ins. Co., 943 F.2d 1097, 1099 (9th Cir.1991). If, as is the case here, "no ruling exists from the highest court of the state, we must follow intermediate appellate decisions unless 'convinced by other persuasive data that the highest court of the state would decide otherwise.' " Ogden Martin Systems, Inc. v. San Bernardino County, 932 F.2d 1284, 1288-89 (9th Cir.1991) (quoting West v. American Tel. & Tel. Co., 311 U.S. 223, 237, 61 S.Ct. 179, 183-84, 85 L.Ed. 139 (1940)).
 
 
 10
 In Corvallis Aero, Francisco Villalobos suffered an on-the-job injury caused by Corvallis Aero Service ("Corvallis") employees' negligence. Villalobos received workers' compensation benefits from the State Accident Insurance Fund ("SAIF"), and he also brought a negligence action against Corvallis. Corvallis's liability insurer was insolvent, so OIGA assumed Corvallis's defense. Villalobos and Corvallis entered into a settlement agreement, under which Corvallis agreed to pay Villalobos for his injuries, contingent on a declaratory judgment by the Oregon courts that SAIF had no right to share in Villalobos's recovery.
 
 
 11
 Under Oregon law, a worker who is awarded worker's compensation may also be able to bring a tort action against the third party responsible for the injury. Corvallis Aero, 724 P.2d at 882. If the worker brings such a suit, the agency that pays the worker's compensation benefits--in Villalobos' cases, SAIF--has a lien on the worker's cause of action and is entitled to share in the proceeds. Id. The court in Corvallis Aero was called upon to decide whether SAIF's recovery from Corvallis and OIGA was barred by the provision excluding "[a]ny amount due any ... insurer ... as subrogated recoveries or otherwise."
 
 
 12
 Like Buhler-Miag's claim, the claim in Corvallis Aero was technically not a subrogation claim because Villalobos brought the action in his own name. SAIF simply had a lien on the cause of action and a right to a share in the proceeds. The Corvallis Aero court stated that it did not think "the legislative preclusion of OIGA's subrogation to insurers was meant to turn on the coincidence of whether the worker or the insurer brings the action in which the amounts payable to the insurer are recovered." Id. at 883. The court added, "Our understanding ... is that an amount which, for any reason, finds its way to an insurer rather than a claimant or an insured, is beyond the scope of what OIGA is authorized or required to pay." Id. Finally, the court stated: "Underlying some of SAIF's arguments is the suggestion that, because it enjoys a lien ... its rights are not defeated by the anti-subrogation provisions of ORS chapter 734. That suggestion is incorrect.... [T]he statutes preclude payment of amounts due insurers 'as subrogation recoveries or otherwise.' " Id. at 884 (emphasis in original).
 
 
 13
 The district court attempted to distinguish Corvallis Aero on the ground that unlike the SAIF, Buhler-Miag clearly is not an insurer, and that in the present situation Buhler-Miag is the real party in interest. This distinction does not hold up, because the party in the same position as SAIF is not Buhler-Miag but Republic Insurance, which is an insurer. Additionally, while Buhler-Miag is the real party in interest, so was Villalobos. The only distinction between the cases is that Corvallis Aero involved a lien and Buhler-Miag's claim involves a loan receipt. The district court failed to explain why both liens and loan receipts should not fall under the general category of "or otherwise."
 
 
 14
 The district court's statutory interpretation could only be correct if the statute's language were different. If the statute said "claims by insurers ... as subrogation recoveries or otherwise," then it would be significant that the claim was made by Buhler-Miag rather than Republic Insurance. The statute, however, says "amount due any ... insurer," and the money is due to Republic Insurance. Furthermore, if the statute referred to "subrogation recoveries or subrogation equivalents," it would be significant that a loan receipt is different from a subrogation agreement. However, the statute says "subrogated recoveries or otherwise," so it is not determinative that this case involved a loan receipt.
 
 
 15
 Buhler-Miag claims the interpretation urged by the OIGA and the LIGA requires the courts to speculate on where all funds paid by the OIGA to any non-insurer claimant might eventually end up. This is simply not true. Buhler-Miag is contractually bound to give any recovery to Republic Insurance, and Republic has an irrevocable power to collect any claim. When there is no question that payment is "due" to an insurer, no speculation is required.
 
 
 16
 Therefore, we follow Corvallis Aero and conclude that Buhler-Miag's claim is excluded from the definition of a "covered claim" because any recovery by Buhler-Miag will go to Republic Insurance.
 
 III
 LOUISIANA LAW
 
 17
 The relevant portions of the LIGA statute, La.Rev.Stat.Ann. Secs. 22:1375-94, are identical to the OIGA statute. The only Louisiana case discussing the question raised in the present litigation is the Louisiana Supreme Court's decision in Ursin v. Insurance Guaranty Association, 412 So.2d 1285 (La.1981).
 
 
 18
 The Ursin case stemmed from a tort suit brought by an automobile accident victim against (1) Edward Ursin, (2) Manchester Insurance Company, Ursin's primary liability insurer with a $5,000 policy limit, and (3) National Indemnity Company, Ursin's excess insurer. Manchester was unable to contribute to any settlement because of financial difficulties, so Ursin and National settled the suit for $75,000, with National paying the entire amount, including the first $5,000 owed by Ursin and Manchester. Ursin then assigned his rights against Manchester to National. When Manchester became insolvent, LIGA assumed responsibility for the outstanding claims. Ursin and National then jointly filed suit against LIGA to recover the $5,000 that Manchester owed. LIGA argued that the $5,000 claim was excluded as "subrogation recoveries or otherwise."
 
 
 19
 The Louisiana Supreme Court initially found in favor of Ursin and National, but on rehearing decided that the language in the LIGA statute is "clear and unambiguous and that it specifically bars National's claim against LIGA." Id. at 1288. The court did not decide whether National's claim was a subrogation or an assignment because it concluded that the claim would be "excluded from the definition of a covered claim even if it is simply an assignment and not a subrogation." Id. at 1289. The court stated that the language used, " 'any amount due any ... insurer ... as subrogation recoveries or otherwise' ... is very broad and seems to encompass amounts due an insurer for any reason whatsoever." Id. The court restated this concept later when it said, "an amount due an insurer as subrogation recoveries, or in a different manner, would be excluded from the definition of a covered claim." Id. (emphasis in original). The holding in Ursin, therefore, parallels Corvallis Aero and strongly supports LIGA's argument.
 
 
 20
 The Louisiana Supreme Court somewhat complicated the analysis with dicta in Ursin discussing some problems the court saw in the LIGA statute. The court expressed its concern about "anomalies" within the statute that could create a situation where "[t]he result, in terms of when LIGA will be required to pay, often may well depend upon the ingenuity of the parties involved." Id. at 1290. The court described how these anomalies could have altered Ursin's case:
 
 
 21
 For instance, in the present case, LIGA could have been made to bear this very loss had National and Ursin simply proceeded differently. Ursin, as an insolvent insured and a person whom the law was specifically designed to protect, could certainly have recovered the $5,000.00 from LIGA. The objective in the settlement might have been served by having National loan Ursin $5,000.00 while taking a promissory note.... It is only because National is an insurer that its claim is barred by the statute.
 
 
 22
 Id.
 
 
 23
 The court suggested here that Ursin could have recovered from LIGA if National had executed a loan receipt with him and had not been a joint plaintiff in the action. That is the situation presented in the case currently before us. Buhler-Miag argues that we should accord this dicta substantial weight because it indicates exactly what the Louisiana Supreme Court would do in the loan receipt situation. The Ninth Circuit has stated that "[i]n cases where the highest appellate court of the state has not spoken, well-considered dicta should not be ignored." Gee v. Tenneco, Inc., 615 F.2d 857, 861 (9th Cir.1980).
 
 
 24
 The dicta in Ursin, however, contradicts the case's holding. The Ursin court held that "amounts due an insurer for any reason whatsoever" are excluded from the definition of a covered claim. Ursin, 412 So.2d at 1289. Nowhere in its holding did the court suggest that whether a claim is covered depends on whether the claimant is an insurer. Rather, the court focused on whether the money is "due to an insurer for any reason whatsoever." Id. (emphasis added). Yet in its dicta, the court suggested that the identity of the claimant could be determinative.
 
 
 25
 We cannot give substantial weight to the dicta because it conflicts with the holding we are bound to follow. We conclude that Buhler-Miag's claim against LIGA is excluded from the definition of a "covered claim" under Louisiana law as articulated by the Louisiana Supreme Court in Ursin.[1]
 
 
 26
 We REVERSE the district court's grant of summary judgment to Buhler-Miag and REMAND the case to the district court with instructions that summary judgment be granted to LIGA and OIGA.
 
 
 
 *
 Honorable Samuel P. King, Senior United States District Judge for the District of Hawaii, sitting by designation
 
 
 [1]
 Buhler-Miag argues that the district court's rulings on a number of occasions during this litigation that loan receipts do not qualify as "subrogation recoveries or otherwise" constitute law of the case and should guide this court's decision. However, the law-of-the-case doctrine only precludes a court from considering an issue previously decided by the same court or a higher court, i.e. the Ninth Circuit or the Supreme Court, in the identical case. Milgard Tempering, Inc. v. Selas Corp. of America, 902 F.2d 703, 715 (9th Cir.1990). While the district court has decided the question now before us, we have a responsibility to determine whether the district court's decision was correct. The law of the case doctrine is inapplicable here