[No. 59947-0-I.    Division One.    July 7, 2008.]

BORDEAUX, INC., ET AL., *Respondents*, v. AMERICAN SAFETY
INSURANCE COMPANY, *Appellant*.

*Russell C. Love* and *Mark N. Thorsrud* (of *Thorsrud Cane & Paulich*), for appellant.

*A. Richard Dysktra* and *Stephanie Lorraine Grassia* (of *Stafford Frey Cooper, PC*), for respondents.

¶1 Agid, J. — This case concerns the nature of "self-insured retention" (SIR) provisions in the commercial general liability policies American Safety Insurance Company issued to condominium developers Bordeaux, Inc., and Cameray, Inc. Because the SIRs were not "insurance" in any traditional sense, the trial court properly ruled that they were not primary insurance for purposes of subrogation and the developers were entitled to be made whole before American Safety could recover funds from third-party settlements. Also, because an insurer is not entitled to apportion defense costs between two policies where the insured's duty to defend is triggered under both policies, we affirm the trial court's ruling that Bordeaux satisfied its

obligation under the American Safety SIR to pay $100,000 in defense costs and expenses, as well as its identical obligation to another insurer, by paying that amount once. It is therefore entitled to reimbursement of its second $100,000 payment toward the settlement of construction defect claims. Accordingly, we affirm.

## FACTS

¶2 Bordeaux developed the Bordeaux Condominiums in Sammamish. On November 19, 2004, after the units were completed and sold, the Bordeaux Condominium Owners Association (COA) filed a lawsuit against Bordeaux, alleging extensive construction defects and property damage related to the project's exterior cladding, building envelope, underlying components, roof design, site drainage, and mechanical systems. Bordeaux tendered its defense to its insurers, American Safety and Steadfast Insurance Company (Zurich). Both Zurich and American Safety agreed to defend Bordeaux under a reservation of rights.

¶3 Bordeaux had a commercial general liability insurance policy from American Safety insuring it against defective construction claims by the Bordeaux COA for property damage occurring from September 30, 2000 to September 30, 2001. The American Safety policy contained an SIR provision, which states:

> Our obligation under the policy to pay damages or SUPPLEMENTARY PAYMENT – COVERAGES A AND B to you or on your behalf applies only to the amount of damages or SUPPLEMENTARY PAYMENTS – COVERAGES A AND B in excess of any self-insured retention amounts stated in the Schedule above as applicable to such coverages, and the limits of insurance applicable to such coverages will not be reduced by the amount of such self-insured retention.

> As a condition precedent to our obligations to provide or continue to provide indemnity, coverage or defense hereunder, the insured, upon receipt of notice of any "suit", incident or "occurrence" that may give rise to a "suit", and at our request,

shall pay over and deposit with us all or any part of the self-insured retention amount as specified in the policy, requested by us, to be applied by us as payment toward any damages or SUPPLEMENTARY PAYMENTS – COVERAGES A AND B incurred in the handling or settlement of any such incident, "occurrence" or "suit".

. . . .

Per Occurrence Basis - if the self-insured retention is on a "per occurrence" basis, the self-insured retention amount applies to all damages and SUPPLEMENTARY PAYMENTS – COVERAGES A AND B because of "bodily injury", "property damage" or "personal and advertising injury" as the result of any one "occurrence" regardless of the number of persons or organizations who sustain damages because of that "occurrence" or offense.[1]

¶4 Under the policy, Bordeaux was obligated to pay $100,000 "per occurrence for Condominium, Townhome/ Apartment Work," i.e., the "supplementary payments – coverages A and B." The term "occurrence" is defined in the policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions that happen during the term of this insurance." The policy says nothing about fulfilling the SIR requirement if a claim or occurrence triggers coverage under more than one policy.

¶5 The American Safety policy also contains a subrogation provision, which states, "[i]f the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us." The policy defines the word "we" as "American Safety."

¶6 Bordeaux also held a commercial general liability policy from Zurich providing liability protection covering the same defective construction claims for property damage occurring from September 30, 2001 to September 30, 2002. The Zurich policy contained an SIR provision that, for purposes of this appeal, is the same as American Safety's.

---

[1] (Emphasis omitted.)

¶7 On February 17, 2006, the parties mediated the Bordeaux COA lawsuit and agreed to a settlement of $630,000. American Safety and Zurich agreed that, with respect to any obligation to indemnify, American Safety would owe 60 percent of the total and Zurich would owe 40 percent after Bordeaux satisfied its obligation to pay its SIR. American Safety told Bordeaux that it expected Bordeaux to pay an additional $100,000 toward the settlement to satisfy its SIR obligation, contending that the $105,399 Bordeaux had already paid in defense costs merely satisfied Zurich's SIR provision. American Safety stated that it would withhold benefits under its policy until Bordeaux paid a second $100,000.

¶8 In response, Bordeaux provided American Safety with copies of its expenses documenting the $105,399 in defense costs related to the COA, which Bordeaux claimed satisfied its SIR obligation. American Safety responded only by reasserting its demand for an additional $100,000 payment from Bordeaux before it would fund the settlement.

¶9 On March 15, 2006, the cutoff date for funding the settlement, Bordeaux paid the COA $100,000 to mitigate its damages. Consistent with the number of units sold during their separate policy coverage periods, American Safety and Zurich apportioned their settlement liabilities so that American Safety paid 60 percent ($318,000) and Zurich paid 40 percent ($212,000) to complete the settlement. Bordeaux later settled with several of the third-party subcontractors. Those funds were held pending a judicial determination of whether American Security was entitled to recover from those funds before Bordeaux was made whole.

¶10 Simultaneously, Bordeaux's "sister corporation," Cameray, Inc., built and sold the Cameray Condominiums, which were covered by policies from American Safety and Zurich identical to those issued for the Bordeaux project. In 2004, the Cameray Condominium Homeowners Association sued Cameray for construction defects. And in 2005,

Cameray settled the claims, having satisfied its $100,000 SIR on behalf of American Safety and Zurich concurrently. Cameray then obtained third-party settlements from contractors, and those funds are also being held in trust pending our determination of whether American Safety has a right to recover before its insured.

¶11 On June 1, 2006, Bordeaux and Cameray filed a complaint for breach of contract and declaratory judgment against American Safety. Bordeaux sought recovery of the second $100,000 it contributed to the Bordeaux settlement. Both insureds asked the court to rule that they were entitled to the proceeds of the third-party settlements to fully reimburse them for the SIR funds they paid for defense and settlement costs before any of the proceeds were paid to their insurers. The trial court granted summary judgment for Bordeaux and Cameray on both issues.

¶12 The court granted Bordeaux's motions for disbursement of the third-party settlement funds held in the court registry, attorney fees, and final judgment against American Safety for the second $100,000, plus interest, fees, and costs. American Safety appeals all of the court's orders.

## DISCUSSION

### I. *Standards of Review*

¶13 We review summary judgment orders de novo and engage in the same inquiry as the trial court.[2] Interpretation of an insurance policy is a question of law, reviewed de novo.[3] Insurance policies are construed as a whole and " 'given a fair, reasonable, and sensible construction.' "[4] We consider a policy as a whole so we can give effect to every clause in the policy.

---

[2] *Woo v. Fireman's Fund Ins. Co.*, 161 Wn.2d 43, 52, 164 P.3d 454 (2007).

[3] *Alaska Nat'l Ins. Co. v. Bryan*, 125 Wn. App. 24, 30, 104 P.3d 1 (2004), *review denied*, 155 Wn.2d 1007 (2005).

[4] *Kitsap County v. Allstate Ins. Co.*, 136 Wn.2d 567, 575, 964 P.2d 1173 (1998) (internal quotation marks omitted) (quoting *Queen City Farms, Inc. v. Cent. Nat'l Ins. Co.*, 126 Wn.2d 50, 65, 882 P.2d 703, 891 P.2d 718 (1994)).

¶14 The courts liberally construe insurance policies to provide coverage wherever possible.[5] "If terms are defined in a policy, then the term should be interpreted in accordance with that policy definition."[6] If terms are not defined, then they are to be given their " 'plain, ordinary, and popular' meaning."[7] Any remaining ambiguity must be given a meaning and construction most favorable to the insured.[8] Coverage exclusions "are contrary to the fundamental protective purpose of insurance and will not be extended beyond their clear and unequivocal meaning. Exclusions should also be strictly construed against the insurer."[9]

## II. *Self-Insured Retention Provisions*

¶15 The fundamental dispute in this appeal concerns the nature and meaning of the SIR provisions in the American Safety policies held by Bordeaux and Cameray. American Safety contends the SIRs operate as primary insurance and therefore its policies provide "excess" insurance. Thus, it argues, its rights to subrogation are superior to Bordeaux's and Cameray's and it is entitled to recover third-party settlement funds before its insureds. Bordeaux and Cameray contend that they are not their own primary insurers, the SIRs are not "insurance," and therefore they are entitled to recover third-party funds and be "made whole" before their insurers. We agree with Bordeaux and Cameray that "self-insurance" provisions are not insurance.

---

[5] *Riley v. Viking Ins. Co. of Wis.*, 46 Wn. App. 828, 733 P.2d 556, *review denied*, 108 Wn.2d 1015 (1987).

[6] *Kitsap County*, 136 Wn.2d at 576.

[7] *Id.* (quoting *Boeing Co. v. Aetna Cas. & Sur. Co.*, 113 Wn.2d 869, 877, 784 P.2d 507 (1990)).

[8] *Transcon. Ins. Co. v. Wash. Pub. Utils. Dists.' Util. Sys.*, 111 Wn.2d 452, 456-57, 760 P.2d 337 (1988).

[9] *Stuart v. Am. States Ins. Co.*, 134 Wn.2d 814, 818-19, 953 P.2d 462 (1998) (citation omitted).

¶16 First, the term "insurer" is defined under the Washington Insurance Code, chapter 48.01 RCW, as "every person engaged in the business of making contracts for insurance."[10] Persons and entities that are so engaged are subject to regulation by the Washington State insurance commissioner. Neither Bordeaux nor Cameray operated as insurers under Washington law.

¶17 Second, Washington courts have rejected the argument that self-insurance constitutes "insurance."[11] The court in *Stamp*[12] explained the distinction between self-insurance and primary insurance as follows:

> "[Self-insurance] is analogous to the more common types of direct insurance such as automobile collision coverage or major medical coverage, wherein there is usually a stated deductible amount, the effect of which is, in simplest terms, to make the insured 'self-insured['] for any loss up to the amount of the deductible. No one has yet to suggest in such instances that the insured, being self-insured up to the amount of the deductible, is an 'insurer' who has merely 'reinsured' the risk above a certain limit."[13]

¶18 American Safety's attempt to distinguish the controlling holdings of *Stamp* and *Kyrkos*[14] on the ground that they involve "definitional issues" not involved here is unavailing. Their "distinction" is one without a difference. Likewise, American Safety's reliance on *Odessa School District No. 105 v. Insurance Co. of America*[15] and *Pacific*

---

[10] RCW 48.01.050.

[11] *Stamp v. Dep't of Labor & Indus.*, 122 Wn.2d 536, 542-44, 859 P.2d 597 (1993); *Kyrkos v. State Farm Mut. Auto. Ins. Co.*, 121 Wn.2d 669, 674, 852 P.2d 1078 (1993).

[12] *Stamp v. Dep't of Labor & Indus.*, 122 Wn.2d 536, 859 P.2d 597 (1993).

[13] 122 Wn.2d at 543 (second alteration in original) (quoting *Zinke-Smith, Inc. v. Fla. Ins. Guar. Ass'n*, 304 So. 2d 507, 509 (Fla. Dist. Ct. App. 1974), *cert. denied*, 315 So. 2d 469 (Fla. 1975)).

[14] *Kyrkos v. State Farm Mut. Auto. Ins. Co.*, 121 Wn.2d 669, 852 P.2d 1078 (1993).

[15] 57 Wn. App. 893, 903, 791 P.2d 237 (1990).

*Employers Insurance Co. v. Domino's Pizza, Inc.*[16] is misplaced. Although both cases somewhat loosely refer to the insureds' self-insured retentions as primary insurance, neither case examined whether the SIRs operated as insurance for the purpose of subrogation.[17] The basic flaw in American Safety's argument is that it fails to recognize that traditional insurance involves risk shifting, while self-insurance involves risk retention:

> "Self-insurance does not constitute insurance in any traditional form. In self-insurance the company, governmental entity or individual chooses not to purchase insurance but rather retains the risk of loss. In order to protect against losses, the self-insured will often set aside funds on a regular basis to provide its own pool from which losses will be paid. This can be analogized to the situation where a party purchasing traditional insurance pays premiums to the insurer on a regular basis. However, in a self-insurance situation there is no shifting of the risk from the individual person or company to a larger group."[18]

¶19 The fact that Bordeaux and Cameray each chose to retain the risk of paying up to $100,000 for homeowners' construction defect claims does not convert them into "primary insurers" for purposes of subrogation against third-party claims if they face greater losses which are covered by their insurers. Nothing in the American Safety contracts gives it the right to subrogation for sums that it did not pay, such as the SIRs. In fact, the subrogation provision clearly allows American Safety to recover only payments it actually made. We will not give it rights it did not clearly provide for in its policy. The long-standing rule of *Thiringer v. Ameri-*

---

[16] 144 F.3d 1270, 1276-77 (9th Cir. 1998).

[17] We suggest that courts be more precise in characterizing the nature of these payments lest we risk converting conventional deductibles to true "self-insurance."

[18] *Young v. Progressive Se. Ins. Co.*, 753 So. 2d 80, 85-86 (Fla. 2000) (emphasis omitted) (quoting 1 ERIC MILLS HOLMES & MARK S. RHODES, APPLEMAN ON INSURANCE § 1.3, at 10 (2d ed. 1996)).

*can Motors Insurance Co.*[19] and its progeny favoring full compensation of insureds over subrogation rights of insurers applies here. The trial court properly ruled that Bordeaux and Cameray were entitled to be made whole before any third-party recovery funds are paid to the insurers.[20]

### III. *Reimbursement of Defense Costs*

¶20 American Safety next argues that the trial court erred in ruling that Bordeaux is entitled to be reimbursed for the $100,000 it paid toward the settlement after it had paid $105,399 in defense costs. American Safety claims that Bordeaux's original defense cost payment satisfied only Zurich's SIR, and American Safety's duty to defend was not triggered until Bordeaux paid an additional $100,000 SIR. We disagree.

¶21 Bordeaux provided American Safety with documentation of its defense cost expenditures, which has never been disputed. In fact, American Safety has never attempted to show that the $105,399 Bordeaux paid was not reasonably related to defending against claims for damage to the common areas owned by all unit owners and the 59 units sold during American Safety's coverage period. Instead, American Safety merely asserts that the homeowners' claims arose from "at least two occurrences" that are covered separately under its policy and Zurich's policy. From that premise it extrapolates its position that Bordeaux's premediation defense costs satisfied only Zurich's SIR.

¶22 We agree with Bordeaux. The American Safety policy simply states that it is obligated to pay covered

---

[19] 91 Wn.2d 215, 220, 588 P.2d 191 (1978); *see also Mahler v. Szucs,* 135 Wn.2d 398, 418-26, 957 P.2d 632 (1998).

[20] *Polygon Nw. Co. v. Am. Nat'l Fire Ins. Co.,* 143 Wn. App. 753, 189 P.3d 777 (2008) (applying "made whole" rule in a equitable reapportionment dispute arising from a construction defect lawsuit); *see also Cook v. USAA Cas. Ins. Co.,* 121 Wn. App. 844, 90 P.3d 1154 (2004) (in homeowners insurance case, court indicates that the "made whole" rule would have applied but for the lack of third-party liability to the insured).

damages above $100,000. It says nothing about whether or not Bordeaux's obligation to pay the American Safety SIR is satisfied when it fulfills a similar obligation under another policy. It is also clear that the defense costs Bordeaux paid were necessarily related to damages covered by both the American Safety and Zurich policies. "No right of allocation exists for the defense of non-covered claims that are 'reasonably related' to the defense of covered claims." [21] Therefore American Safety has no right to apportion defense costs between the two policies. The trial court properly ruled that Bordeaux is entitled to reimbursement of its second $100,000 payment toward the settlement.

¶23 Finally, we affirm the trial court's award to Bordeaux and Cameray of attorneys' fees and costs, as well as their fees and costs on appeal under *Olympic Steamship*,[22] as the prevailing party in this coverage dispute.

DWYER, A.C.J., and GROSSE, J., concur.

Review denied at 165 Wn.2d 1035 (2009).

---

[21] *Nordstrom, Inc. v. Chubb & Son, Inc.*, 820 F. Supp. 530, 536 (W.D. Wash. 1992) (quoting *Fed. Realty Inv. Trust v. Pac. Ins. Co.*, 760 F. Supp. 533, 536-37 (D. Md. 1991)), *aff'd*, 54 F.3d 1424 (9th Cir. 1995).

[22] *Olympic S.S. Co. v. Centennial Ins. Co.*, 117 Wn.2d 37, 811 P.2d 673 (1991).