Argued and submitted September 21, 1987, judgments for defendants Campbell, Bidgood and Nichols, dba Nichols Construction Company, affirmed, judgments for defendant Dunlap reversed and remanded for further proceedings June 1, 1988

## WINDOW COVERINGS, INC.,
*Appellant,*

v.

## CAMPBELL et al,
*Respondents.*

(83-1-272; CA A42133 (Control))

## OREGON ROOT STOCK, INC.,
*Appellant,*

v.

## CAMPBELL et al,
*Respondents.*

(83-6689; CA A42134)

## DORDEVICH et al,
*Appellants,*

v.

## CAMPBELL et al,
*Respondents.*

(83-3-268; CA A42135)

## INGRAHAM et al,
*Appellants,*

v.

## CAMPBELL et al,
*Respondents.*

(83-6690; A42136)

## SHIELDS,
*Appellant,*

v.

## CAMPBELL et al,
*Respondents.*

(83-6691; CA A42162)
(Cases consolidated)

755 P2d 719

Timothy Miller, Portland, argued the cause for appellants. On the briefs were Joan L. Volpert and Martin, Bischoff, Templeton, Biggs & Ericsson, Portland.

Thomas W. Brown, Portland, argued the cause for respondents. With him on the brief was Cosgrave, Kester, Crowe, Gidley & Lagesen, Portland.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

In these consolidated cases, the trial court granted summary judgments for defendants, three of whom are partners and the other an employe of Airvest Properties,[1] on the ground that the actions are barred by ORS 734.695. That statute relieves the insureds of insolvent insurers from liability for certain "subrogation recoveries." Airvest is the named insured of an insolvent insurer. Plaintiffs appeal from the resulting judgments. We affirm in part and reverse in part.

The parties stipulated to the facts:

"1. The claims made in each case arise from damage to aircraft resulting from the failure and collapse of the hangars in which they were located during a wind storm on November 14, 1981. In each case the aircraft owner plaintiff held a policy of insurance covering damage to the aircraft hull. In each case, the aircraft hull insurer has paid a portion of the damages suffered by its aircraft owner insured and thereby became subrogated to the rights of its insured.

"2. In each case, the direct, unsubrogated claims of the aircraft owner plaintiff have been fully settled and compromised, with the exception of attorneys fees on the District Court cases. There remain only the subrogated claims of the aircraft hull insurers, and such claims exist in each of the five captioned cases.

"3. In each case, the failure and collapse of the hangar resulting in damage to the aircraft is alleged by plaintiffs to have been the direct and proximate result of defendants' failure to follow design specifications or to use proper materials, defective construction, use of inexperienced workmen, or failure to supervise construction. In each case, the allegations of negligent conduct are against each named defendant individually and not against Airvest or Airvest Properties, an Oregon partnership composed of defendants Campbell, Bidgood and Nichols, which owned and operated the airport property and hangars at issue.

"4. Defendant Eldon Dunlap was the construction foreman, hired by Airvest, with respect to the construction of the hangars involved in the present cases. He supervised the buying of materials and construction of the hangars.

---

[1] The parties describe defendant Nichols as a partner in Airvest. They ascribe no independent significance, for purposes of this case, to his dba, Nichols Construction Company.

"5. On the date plaintiffs' aircraft were damaged, November 14, 1981, the Airvest partnership held a policy of insurance issued by Ideal Mutual Insurance Company, * * * which was in force and effect. * * * Following the commencement of these five cases, Ideal Mutual Insurance Company became insolvent, and the Oregon Insurance Guaranty Association [OIGA] undertook the processing of the claims made against Ideal Mutual and the defense of these cases under the provisions of ORS 734.510, *et seq.*"

The affidavit of Kennell, the administrator of OIGA, was also introduced in the summary judgment proceedings. It shows, *inter alia,* that, before its insolvency, Ideal Mutual undertook the defense of and paid the judgment for "these defendants" in a related case, that OIGA has undertaken the defense in the present cases and that it "has not denied coverage to the defendants under the terms and provisions of the underlying policy."

ORS 734.695 provides:

"The insured of an insolvent insurer shall not be personally liable for amounts due any reinsurer, insurer, insurance pool or underwriting association as subrogation recoveries or otherwise up to the applicable limits of liability provided by the insurance policy issued by the insolvent insurer."

The essence of plaintiffs' argument is that defendants are not the insured but are the partners and an employe of the insured; that only an insured or persons whose allegedly actionable conduct is covered by an insolvent insurer's policy may avail themselves of ORS 734.695; and that there are questions of fact as to whether defendants or their conduct come within the coverage of Ideal Mutual's policy. Defendants maintain that plaintiffs' argument need not be reached, because Ideal Mutual's acknowledgment that its policy covered defendants and the claims, along with OIGA's similar acknowledgment as the successor to Ideal Mutual's rights and obligations, *see* ORS 734.570(2), is conclusive and cannot now be challenged by plaintiffs. Defendants also contend that the plaintiffs other than the insurers have been fully compensated, that these actions are in reality subrogation claims on behalf of the insurers, that OIGA is expending money and resources to defend the subrogation actions and that allowing plaintiffs to further pursue their claims would therefore violate the policy of ORS 734.510 to ORS 734.710. *See Corvallis*

*Aero Service v. Villalobos,* 81 Or App 137, 724 P2d 880, *rev den* 302 Or 461 (1986). As an alternative to those arguments, defendants assert that they were insured by the Ideal Mutual policy against these claims.

■    We are unable to agree with defendants' argument that Ideal Mutual's and OIGA's apparent acceptance of the claims is dispositive on the coverage question. Although the consensual construction the parties to a contract give it is highly relevant, *see, e.g., Wheatley v. Carl Halvorson, Inc.,* 213 Or 228, 252, 323 P2d 49 (1958), it is not conclusive, and a third party whose interests are affected by the meaning of a contract may challenge the parties' interpretation. For example, there are many cases in which the plaintiffs, proceeding on a *respondeat superior* theory, have successfully challenged the understanding of the putative masters and servants that the contracts governing their association did not create an employment or agency relationship. *See, e.g., Shepard v. Sisters of Providence,* 89 Or App 579, 750 P2d 500 (1988).

A more difficult question is presented by defendants' argument that it offends the statutory policy for plaintiffs to bring what are in fact actions to subrogate an insurer and for OIGA to be put to the expense of defending the actions. Plaintiffs concede that, under ORS 734.510(4)(b)(B) as we construed it in *Corvallis Aero Service v. Villalobos, supra,* they could not bring these claims against OIGA directly, because that statute expressly excludes amounts due insurers "as subrogated recoveries or otherwise" from the "covered claims" which OIGA must pay.[2] *See* ORS 734.570(1). Although the insurers were candid enough to become named plaintiffs in only two of the five cases before us, it is not disputed that the damages that all of the plaintiffs seek are due insurers as subrogation. Plaintiffs argue, however, that to be relieved from liability by ORS 734.695:

> "[D]efendants must be the 'insured[s] of an insolvent insurer.' In addition, while the statute does not expressly say so, it presumes that liability is limited for a covered claim, that is, a claim that 'is within the coverage and limits of an insurance policy.'

---

[2] There are limitations on OIGA's responsibility, *see* ORS 734.570(1), but none is relevant at this stage of these cases.

"* * * * *

"Where there is no underlying coverage, any loss is not caused by the insurer's insolvency, but instead exists regardless of the insurer's insolvency. The Act is intended to give the insureds the protection for which they paid, not to expand protections beyond those purchased.

"ORS 734.695 must be read so as to bar subrogated recovery only to the extent that there is coverage under the policy. Any other, broader reading of the statute to require less than a covered claim would lead to absurd results. * * * There must be insurance coverage by the insolvent insurer in the first instance for the provisions of the Act to limit personal liability."

■ Insofar as plaintiffs contend that ORS 734.695 impliedly makes the existence of a covered claim a prerequisite to relief from liability, their argument is circular and somewhat self-defeating. Under the scheme of ORS 734.510 to 734.710, covered claims are what OIGA *must* pay, *except* to insurers. Plaintiffs' suggestion that there must be a covered claim for the insured of an insolvent insurer to be *excused* from paying subrogated amounts due to an insurer turns the statutory concept around. Indeed, the very thing that makes it possible for plaintiffs to proceed in these actions is that, unlike the provisions relating to OIGA's liability, ORS 734.695 does *not* restrict an insured's potential liability to covered claims. As we have noted, plaintiffs' claims for the subrogated amounts are, by definition, not covered.

■ However, we do agree with plaintiffs that, to benefit from ORS 734.695, defendants must be the insureds of an insolvent insurer or their conduct must come within the coverage of the insurer's policy. The remaining question in this appeal from the summary judgments, therefore, is whether defendants are insured or covered by the policy as a matter of law. Defendants argue that they are. Plaintiffs contend that, "at a minimum," there are questions of fact as to each defendant's coverage.

■ Plaintiffs argue first that the conduct alleged against defendants comes within the policy's exclusion from coverage of

"bodily injury or property damage arising out of structural alterations which involve changing the size of or moving

buildings or other structures, new construction or demolition operations performed by or on behalf of the named insured."

Defendants respond that that exclusion does not apply, because it relates only to damage arising directly from structural or construction operations, not to the collapse of a structure long after construction was completed. They are correct. Their alleged conduct does not come within the exclusion.

■　　Plaintiffs next contend that defendants are not "persons insured" under the applicable coverage provision. They state that, although defendants Campbell, Bidgood and Nichols are partners in Airvest, the named insured, they do not fit within the policy provision including as "persons insured"

"if the named insured is designated in the declarations as a partnership or joint venture, the partnership or joint venture so designated and any partner or member thereof but only with respect to his liability as such."

Plaintiffs explain:

"[N]o claim is asserted against any named defendant on the basis that the defendant is a partner in Airvest or on any theory that a defendant's individual liability results from his or her liabliity as a partner. * * *

"* * * * *

"Plaintiffs allege no theory of liability arising from the conduct of the Airvest partnership *per se,* or from the conduct of the individual partners *as partners.* The negligence alleged by plaintiffs is that associated with the individual conduct of each defendant with respect to construction of the hangars." (Emphasis plaintiffs'.)

The hangars were constructed with the participation of members of the partnership for the partnership's use in the conduct of its business. Plaintiffs' argument is specious. The trial court correctly entered summary judgment for defendants Campbell, Bidgood and Nichols.

■　　Defendant Dunlap is not a partner in Airvest. We are unable to conclude that the insurance policy unambiguously affords coverage to him for the conduct plaintiffs allege, and we therefore agree with plaintiffs that a remand is necessary

for further proceedings with respect to the claims against him.[3]

We concluded earlier that Ideal Mutual's and defendants' mutual understanding that the policy covers defendants does not foreclose plaintiffs from contending otherwise. We emphasize that that conclusion does not mean that the understanding of the parties to the contract is not highly probative of what it means.

Judgments for defendants Campbell, Bidgood and Nichols dba Nichols Construction Company affirmed; judgments for defendant Dunlap reversed and remanded for further proceedings not inconsistent with this opinion.

---

[3] Plaintiffs ask only for a remand, and not that we hold as a matter of law that the policy does not cover Dunlap.