274 Neb. 374
JERRY ALSOBROOK, APPELLANT,
v.
JIM EARP CHRYSLER-PLYMOUTH, LTD., A NEBRASKA CORPORATION, APPELLEE.
No. S-06-383.
Suprem Court of Nebraska.
Filed October 26, 2007.
Pamela Epp Olsen, of Cline, Williams, Wright, Johnson & Oldfather, P.C., for appellant.
Joseph F. Gross, Jr., of Timmermier, Gross & Prentiss, for appellee.
HEAVICAN, C.J., CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.
GERRARD, J.
Jerry Alsobrook alleges that Jim Earp Chrysler-Plymouth, Ltd. (Earp), negligently repaired his vehicle, which caused Alsobrook to lose control of his car and collide with construction barrels. Alsobrook's insurer paid the damages and now, through Alsobrook, brings a subrogation claim against Earp. While this action was pending, Earp's insurer became insolvent. The primary issue presented in this appeal is whether Alsobrook's claim against Earp is barred by the application of the Nebraska Property and Liability Insurance Guaranty Association Act.[1]

STATEMENT OF FACTS
On July 15, 1999, Alsobrook filed a petition against Earp. In his petition, Alsobrook alleged as follows: In April and May 1998, Earp performed repairs on Alsobrook's vehicle that required Earp to disconnect the retaining nut and threaded connecting post so that the suspension could be dropped down to allow the transmission to be removed from the engine. After making the repairs to Alsobrook's vehicle, Earp did not properly secure the retaining nut to the connecting post and failed to replace the parts necessary to adequately secure the front passenger side wheel to the steering assembly. Alsobrook further alleged that on July 30, 1998, while driving his vehicle, a retaining nut disconnected from the connecting post, which caused him to lose his ability to steer the car. The vehicle ran off the road and collided with construction barrels lining the side of the road.
Following the accident, Alsobrook filed a claim with his own insurer, Shelter Mutual Insurance Company (Shelter). Shelter paid the claim, less a $1,000 policy deductible. Sometime after Shelter had paid Alsobrook's claim, Alsobrook filed the present lawsuit against Earp seeking $10,190.08 in damages, composed of his $1,000 deductible plus the balance of the damages representing Shelter's subrogation interest.
On November 7, 2001, Earp filed a motion for stay and notice of hearing because its insurer, Reliance Insurance Company (Reliance), had gone into liquidation based on an order entered in the Commonwealth Court of Pennsylvania. On March 22, 2002, Alsobrook's counsel filed a claim with the Nebraska Property and Liability Insurance Guaranty Association (the Association) which, pursuant to the Nebraska Property and Liability Insurance Guaranty Association Act (the Act), provides for the payment of certain claims against insolvent insurance companies. The Association denied Alsobrook's claim, explaining in a letter to Alsobrook that "[ill appears that the claim is a subrogation claim by Shelter" and that under the Act, the Association is "unable to pay subrogation claims or policy deductibles."[2]
In May 2002, Earp filed a motion for summary judgment which was later converted to a motion for partial summary judgment. The district court granted Earp's motion for partial summary judgment, concluding that the claim filed by Alsobrook's attorney with the Association, and the Association's denial of that claim, constituted "an unconditional general release of all liability of . .. Earp in connection with the Alsobrook claim pursuant to § 44-2406(4)" of the Act. The court further found that, even though Shelter had a subrogation right for what it had paid to Alsobrook, neither Shelter nor Alsobrook could pursue Earp for recovery of any such subrogation interest because of the effect of the Act. Finally, the court determined that Alsobrook does have a cause of action against Earp for the $1,000 deductible not paid by Shelter.
Alsobrook filed a motion for reconsideration, alleging that the Act did not apply to the case. The court denied Alsobrook's motion to reconsider and ordered that "[p]ursuant to [Earp's] stipulation," judgment was to be entered in favor of Alsobrook for the $1,000 deductible. Alsobrook appealed to the Nebraska Court of Appeals.
The Court of Appeals reversed the district court's decision and remanded the cause because there was "both a pleading and a proof deficiency."[3] The court explained that "the evidence [did] not show, nor [was] it admitted in the pleadings, that Shelter paid Alsobrook any portion of his property damages."[4] The court further noted that a "second problem [was] that Shelter's alleged subrogation and the resulting effect of the Act [were] not pled as an affirmative defense by Earp to Alsobrook's suit."[5]
On remand, Earp filed an amended answer asserting the application of the Act as an affirmative defense and submitted evidence establishing that Shelter had paid Alsobrook's claim, less the $1,000 policy deductible. Earp also offered into evidence the affidavit of Victor Kovar, a claims manager for the Association. Generally, Kovar opined that the Reliance policy covered Alsobrook's claim against Earp but that Shelter's subrogation claim was barred by the Act.
Alsobrook objected, arguing that the affidavit contained legal conclusions as to the proper interpretation of the Act and Reliance's insurance policy. The district court overruled this objection. Earp again filed a motion for partial summary judgment, which was granted. The court explained that because Earp had made an offer to confess judgment in favor of Alsobrook with respect to the deductible amount, judgment was entered for Alsobrook and against Earp in the amount of $1,000. Alsobrook appealed.

ASSIGNMENT OF ERROR
Alsobrook assigns, consolidated, restated, and renumbered, that the district court erred in (1) applying the Act to limit his recovery to $1,000 and (2) receiving into evidence the legal conclusions contained in Kovar's affidavit.

STANDARD OF REVIEW
[1,2] Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.[6] In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence.[7]

ANALYSIS
At issue in this case is whether Alsobrook's claim against Earp is barred by the application of the Act. Earp argues that pursuant to the provisions of the Act, Alsobrookor, more to the point, Shelteris precluded from bringing a subrogation claim against an insured of an insolvent insurer, such as Earp. Alsobrook contends, however, that the Act does not apply in this case because his claim is not a "covered claim" as that term is defined in the Act.

APPLICATION OF GUARANTY ASSOCIATION ACT
Before addressing the legal issues presented in this appeal, it is necessary to set forth the relevant provisions of the Act. The Act applies "to all kinds of direct insurance"[8] and its purpose is
to provide a method for the payment of certain claims against insolvent insurance companies . . . to avoid unnecessary delay in payment of such claims, to avoid financial loss to claimants or to policyholders, to assist in the detection and prevention of insurer insolvencies, and to provide an association of insurers against which the cost of such protection may be assessed in an equitable manner.[9] The Act further states that "[t]he association shall be obligated only to the extent of the covered claims existing prior to the date a member company becomes an insolvent insurer . . ."[10]
A "covered claim" is defined in § 44-2403(4)(a) of the Act as
an unpaid claim which has been timely filed with the liquidator as provided for in the Nebraska Insurers Supervision, Rehabilitation, and Liquidation Act and which arises out of and is within the coverage of an insurance policy to which [this Act] applies issued by a member insurer that becomes insolvent . . . .
Section 44-2403(4)(b) explains that a Iclovered claim shall not include any amount due any . . . insurer . . . as subrogation recoveries or otherwise . . . ." Section 44-2403(4)(b) further provides that
this section shall not prevent a person from presenting the excluded claim to the insolvent insurer or its liquidator, but the claim shall not be asserted against any other person, including the person to whom benefits were paid or the insured of the insolvent insurer, except to the extent that the claim is outside the coverage or is in excess of the limits of the policy issued by the insolvent insurer[.]
Given these provisions and the undisputed evidence that Alsobrook did not file his claim with the liquidator, it is clear that Alsobrook's claim is not a "covered claim" as that term is defined in the Act. Alsobrook argues that because his claim is not a "covered claim," the entire Act is inapplicable. Specifically, Alsobrook contends that § 44-2403(4)(b) cannot be used by Earp as a defense to Alsobrook's subrogation claim. We disagree.
The plain language of the Act reveals that the Legislature intended the Act to protect not only the claimants making claims on the Association, but also the insureds of an insolvent insurance company. One of the stated purposes of the Act is to avoid financial loss to policyholders.[11] And one of the ways in which the Legislature has accomplished this purpose is by prohibiting excluded claims from being asserted against the insured, except to the extent that a claim is outside the policy coverage or is in excess of the policy limits.[12]
[3] In construing a statute, a court must look to the statutory objective to be accomplished, the evils and mischiefs sought to be remedied, and the purpose to be served, and then must place a sensible construction upon the statute to effectuate the object of the legislation, rather than a construction that defeats the purpose of the statute.[13] To conclude that the claim must first be a "covered claim" before an insured is entitled to the defense granted in § 44-2403(4)(b), as urged by Alsobrook, would provide an insured the protection guaranteed by the Act only when the claimant has filed his or her claim with the liquidator.
Alsobrook's interpretation of the Act would give claimants the authority to determine if and when an insured is entitled to the protection of the Act. Alsobrook's interpretation is not dictated by the plain language of the Act and would circumvent one of the Act's express purposes, which is to protect policyholders of insolvent insurers. Accordingly, we conclude that a claim need not be a "covered claim" as defined by § 44-2403(4)(a) to be barred by § 44-2403(4)(b). Here, Alsobrook's claim against Earp is a subrogation claim and, therefore, pursuant to § 44-2403(4)(b), cannot be asserted against Earp, except to the extent that Alsobrook's claim is outside of or in excess of the insurance policy issued by Earp's insolvent insurer.[14]

COVERAGE UNDER EARP'S POLICY
Having determined that § 44-2403(4)(b) is applicable in the present case, we now apply its provisions. Section 44-2403(4)(b) bars Alsobrook's claim except to the extent the claim is outside the scope of Earp's insurance policy.
[4-6] The meaning of an insurance policy is a question of law, in connection with which an appellate court has an obligation to reach its own conclusions independently of the determination made by the lower court.[15] In construing insurance policy provisions, a court must determine from the clear language of the policy whether the insurer in fact insured against the risk involved.[16] In appellate review of an insurance policy, the court construes the policy as any other contract to give effect to the parties' intentions at the time the writing was made. Where the terms of a contract are clear, they are to be accorded their plain and ordinary meaning.[17]
Generally, the purpose of a garage policy is to protect automobile dealers, garage keepers, and owners of automobile service stations against loss by reason of injury to other property or persons by the use of their automobiles. Such policies are designed to care for the specialized needs of the particular operation.[18] As relevant here, the liability section of Earp's garage liability policy provides:
SECTION II  LIABILITY COVERAGE
A. COVERAGE
. . . .
We will pay all sums an "insured" legally must pay as damages because of . . . "property damage" to which this insurance applies, caused by an "accident" and resulting from "garage operations" involving the ownership, maintenance or use of covered "autos."
....
B. EXCLUSIONS
This insurance does not apply to any of the following:
....
13. WORK YOU PERFORMED
"Property damage" to "work you performed" if the "property damage" results from any part of the work itself or from the parts, materials or equipment used in connection with the work.
Earp's garage liability policy also included a section dealing specifically with "garagekeepers coverage." This section states in relevant part:
SECTION III  GARAGEKEEPERS COVERAGE
A. COVERAGE
1. We will pay all sums the "insured" legally must pay as damages for "loss" to a covered "auto" or "auto" equipment left in the "insured's" care while the "insured" is attending, servicing, repairing, parking or storing it in your "garage operations" . . . .
....
B. EXCLUSIONS
1. This insurance does not apply to any of the following:
....
d. Faulty Work.
Faulty "work you performed."
Given this policy language, Alsobrook argues that his claim against Earp does not fall within the policy's coverage. Alsobrook contends that because his claim is based on Earp's alleged negligent repair of Alsobrook's car, his claim is excluded under the "work you performed" and "faulty work" exclusions of the insurance policy, and can be brought directly against Earp. Earp, however, argues that its insurance policy with Reliance provided coverage for Alsobrook's claim and that because Reliance is now insolvent, Alsobrook's claim is barred by application of the Act.
As an initial matter, we conclude that the "faulty work" exclusion in section III of the policy is irrelevant. For section III to apply, the damages to the vehicle must have occurred "while [Earp was] attending, servicing, repairing, parking or storing [the car]." However, Alsobrook alleged in his complaint that the damages to his car occurred approximately 2 or 3 months after Earp negligently performed the repair work. Because the damages did not occur while Earp was performing work on Alsobrook's car, section III of the policy does not cover those damages. In other words, Alsobrook need not concern himself with the "faulty work" exclusion, because section III is entirely inapplicable.
But Alsobrook's claim may be covered under section II of the policy, the liability coverage, unless it is excluded by the "work you performed" exclusion. We recently considered a similar provision in Auto-Owners Ins. Co. v. Home Pride Cos.[19] In Auto-Owners Ins. Co., an apartment complex, Appletree Apartments, Inc. (Appletree), entered into a contract with Home Pride Companies, Inc. (Home Pride), to install new shingles on a number of apartment buildings. Following completion of the project, Appletree began to notice problems with the roof. Appletree eventually filed suit against Home Pride alleging that Home Pride failed to install the shingles in a workmanlike manner and that such faulty workmanship caused substantial and material damage to the roof structures and buildings. After the suit was filed, Home Pride made a claim to its insurer, Auto-Owners Insurance Company (Auto-Owners), for coverage under its commercial general liability policy. Auto-Owners brought a declaratory judgment action against Home Pride claiming that the insurance policy did not provide coverage because the faulty workmanship was not an "occurrence" under the policy.
We explained that "although faulty workmanship, standing alone, is not an occurrence under a [commercial general liability] policy, an accident caused by faulty workmanship is a covered occurrence."[20] We further explained that "if faulty workmanship causes bodily injury or property damage to something other than the insured's work product, an unintended and unexpected event has occurred, and coverage exists."[21] We noted that Appletree had alleged that Home Pride negligently installed shingles on the apartment buildings, which caused the shingles to fall off. Additionally, Appletree alleged that as a consequence of the faulty work, the roof structures and buildings experienced substantial damage. We concluded that the latter allegation "represent[ed] an unintended and unexpected consequence of the contractors' faulty workmanship and goes beyond damages to the contractors' own work product."[22] Therefore, Appletree had properly alleged an "occurrence" within the meaning of the insurance policy.
Auto-Owners further argued that coverage was excluded under the "your work" exclusion in the policy. The "your work" exclusion provided that "[t]his insurance does not apply to:. . . . Damages claimed for any loss, cost or expense incurred by you . . . for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of. "Your work". . .'"[23] We explained that Iglenerally speaking, the `your work' exclusions . . . operate to prevent liability policies from insuring against an insured's own faulty workmanship, which is a normal risk associated with operating a business."[24] We noted that "the rationale behind the `your work' exclusions is that they discourage careless work by making contractors pay for losses caused by their own defective work, while preventing liability insurance from becoming a performance bond."[25]
In rejecting Auto-Owner's argument, we concluded that the "your work" exclusion did not exclude Appletree's damage claim "because [its] claim extends beyond the cost to simply repair and replace the contractors' work, i.e., to reshingle the roofs."[26] The claimed damages to the roof structure and buildings fell outside of the exclusion, and "to the extent that Home Pride may be found liable for the resulting damage to the roof structures and the buildings, Auto-Owners is obligated to provide coverage."[27] Courts in other jurisdictions that have addressed this issue have similarly concluded that damages to property outside of the cost of repairing or replacing the insured's own work is not excluded under a "your work" exclusion and is therefore covered under the policy.[28]
In the present case, the "work you performed" exclusion in section II of Earp's policy excludes only those damages that represent the cost to either repair or replace the work that Earp was contracted to perform. But this exclusion does not act to exclude damages to property other than the work that Earp was contracted to perform, i.e., the damages to Alsobrook's vehicle that go beyond the cost to repair or replace Earp's allegedly negligent work. Here, the only indication in the record with respect to the actual repairs performed on Alsobrook's vehicle is found in Alsobrook's petition. The petition does not state with any clarity what exact repairs were requested. Nor is it evident from the petition what portion of the alleged damages represents the cost to repair or replace the work Earp was contracted to perform, versus damages to property beyond the scope of Earp's repair work. The petition simply provides a dollar amount representing the total damage to the car.
On this record, there is a genuine issue of material fact as to how much of Alsobrook's damages are covered under section HA of the policy and how much is excluded by the "work you performed" exclusion. Therefore, the district court erred in concluding that Alsobrook's entire claim against Earp, besides the deductible, was barred as a matter of law.
With respect to Alsobrook's remaining assignment of error relating to the admission of Kovar's affidavit, we note that the record does not establish to what extent, if any, the court relied on that evidence in reaching its conclusion. Nonetheless, as Alsobrook argues, the scope of an insurance policy is a question of law, with respect to which we have made an independent determination, without reference to the Kovar affidavit. Because our independent analysis cures any error in receiving the affidavit, we need not consider this assignment of error.

CONCLUSION
We conclude that a claim need not be a "covered claim" as defined in § 44-2403(4)(a) to be barred by § 44-2403(4)(b). Section 44-2403(4)(b) prohibits subrogation claims from being asserted against an insured of an insolvent insurer, except to the extent that the claim is outside of or in excess of the insurance policy issued by the insolvent insurer. The district court erred in concluding, as a matter of law, that Alsobrook's entire claim, in excess of the deductible, is barred by the Act. Because there is a genuine issue of material fact as to what damages are covered and excluded under the insurance policy, we reverse the judgment of the district court and remand the cause for further proceedings.
REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.
WRIGHT, J., not participating.
NOTES
[1] Neb. Rev. Stat. § 44-2401 et seq. (Reissue 1998).
[2] See § 44-2403(4)(b).
[3] Alsobrook v. Jim Earp Chrysler Plymouth, No. A-02-1065, 2004 WL 726810 at *5 (Neb. App. Apr. 6, 2004) (not designated for permanent publication).
[4] Id. at *2
[5] Id.
[6] Alston v. Hormel Foods Corp., 273 Neb. 422, 730 N.W.2d 376 (2007).
[7] Geddes v. York County, 273 Neb. 271, 729 N.W.2d 661 (2007).
[8] § 44-2402.
[9] § 44-2401.
[10] § 44-2406.
[11] § 44-2401.
[12] § 44-2403(4)(b).
[13] See, Foster v. BryanLGH Med. Ctr. East, 272 Neb. 918, 725 N.W.2d 839 (2007); Chase 3000, Inc. v. Nebraska Pub. Serv. Comm., 273 Neb. 133, 728 N.W.2d 560 (2007).
[14] See, e.g., Horton v. State Farm Ins. Co., 641 So. 2d 993 (La. App. 1994); Window Coverings, Inc. v. Campbell, 91 Ore. App. 335, 755 P.2d 719 (1988).
[15] Olson v. Le Mars Mut. Ins. Co., 269 Neb. 800, 696 N.W.2d 453 (2005).
[16] Auto-Owners Ins. Co. v. Home Pride Cos., 268 Neb. 528, 684 N.W.2d 571 (2004).
[17] Olson v. Le Mars Mut. Ins. Co., supra note 15.
[18] State Farm Mut. Auto. Ins. Co. v. Royal Ins. Co., 222 Neb. 13, 382 N.W.2d 2 (1986).
[19] Auto-Owners Ins. Co. v. Home Pride Cos., supra note 16.
[20] Id. at 535, 684 N.W.2d at 577 (emphasis in original).
[21] Id. at 535, 684 N.W.2d at 578.
[22] Id. at 537, 684 N.W.2d at 579.
[23] Id.
[24] Id. at 538, 684 N.W.2d at 579.
[25] Id.
[26] Id.
[27] Id. at 539, 684 N.W.2d at 580.
[28] See, e.g., Garrett v. Auto-Owners Ins. Co., 689 So. 2d 179 (Ala. App. 1997); Travelers Ins. Co. v. Volentine, 578 S.W.2d 501 (Tex. Civ. App. 1979).